IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| NICOLE A. RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 116-177 |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Nicole A. Richardson appeals the decision of the Acting Commissioner of Social Security terminating her Supplemental Security Income ("SSI") benefits after a Continuing Disability Review ("CDR") and denying her application for Child's Insurance Benefits ("CIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.   BACKGROUND**

The Commissioner found Plaintiff disabled as a child and awarded her SSI benefits beginning on November 1, 1992. Tr. ("R."), p. 54. Plaintiff was ten years old on her alleged disability onset date. Id. Plaintiff's benefits ceased effective April 2004, but an Administrative

Law Judge ("ALJ") reinstated her benefits in a decision dated February 20, 2007. Id. Plaintiff has completed high school and obtained licensure as a nursing assistant and phlebotomist license, but has no past relevant work. R. 69, 100.

On December 8, 2011, after conducting a CDR, the Social Security Administration ("SSA") determined Plaintiff experienced medical improvement in her condition and was no longer disabled. R. 54. While the CDR was pending, Plaintiff filed for CIB on July 28, 2011, which SSA denied. R. 54, 90-94. SSA upheld both decisions on reconsideration. R. 54, 95-119. Plaintiff requested a hearing before an ALJ, R. 122, and the ALJ held a consolidated hearing on both matters on August 7, 2013. R. 1660-1708. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Plaintiff's mother and Roger Decker, a Vocational Expert. Id. On July 1, 2014, the ALJ issued a final unfavorable decision.[1] R. 54-71.

Applying the sequential process required by 20 C.F.R. §§ 404.1594 and 416.994, the ALJ found:

1. The most recent favorable medical decision, known as the "comparison point decision," was dated February 20, 2007. (20 C.F.R. §§ 404.1594(b)(7) and 416.994(b)(1)(vii)).

2. As of December 8, 2011, the date disability ended, the claimant had the following medically determinable impairments: a history of arteriovenous malformation of the brain, status post radiosurgery with residual seizure disorder, headaches, morbid obesity, depression, and borderline intellectual functioning. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1594(f)(2) and 416.994(b)(5)(i)).

3. Medical improvement occurred between the comparison point decision and December 8, 2011. (20 C.F.R. §§ 404.1594(f)(3) and 416.994(b)(5)(ii)).

---

[1]The ALJ originally issued her decision on June 27, 2014, but amended her decision to correct a typographical error in Plaintiff's onset date of disability. R. 54.

2

4. The medical improvement is related to the ability to work because, as of December 8, 2011, the claimant's comparison point impairments no longer met or medically equaled the same listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 as at the time of the comparison point decision. (20 C.F.R. §§ 404.1594(f)(4)-(5) and 416.994(b)(5)(iii)-(iv)).

5. Since December 8, 2011, the claimant has had a severe impairment or combination of impairments. (20 C.F.R. §§ 404.1594(f)(6) and 416.994(b)(5)(v)).

6. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b),[2] except she can only perform frequent balancing, stooping, kneeling, crouching and crawling. She can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to extreme heat, humidity, and hazards such as heights and dangerous machinery. The claimant is able to perform simple tasks, but no detailed or complex tasks. She is able to perform a low stress job, which I have defined as requiring occasional decision-making, occasional adaption to change in a work setting, and no high production tasks such as high volume assembly line work. The claimant can have superficial contact with the public, but should not perform work that requires customer service, sales, or counter work. She can work in proximity to others, including interacting and working near others, but would perform best in more solitary work tasks. The claimant has no past relevant work. (20 C.F.R. §§ 404.1560, 404.1594(f)(7), 416.960, 416.994(b)(5)(vi)).

7. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including assembler of switch boxes, electronics worker, and assembler of electrical accessories (20 C.F.R. §§ 416.960(c) and 416.966). Therefore, the claimant's disability ended on December 8, 2011 and the claimant has not become disabled again since that date. (20 C.F.R. §§ 404.1594(f)(8) and 416.994(b)(5)(vii)).

---

[2]"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

Id.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 8-10, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of

fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues the ALJ failed to properly evaluate evidence that Plaintiff's severe impairment, namely her seizure disorder, met or was medically equal to Listing 11.02 or 11.03. See Pl.'s Br. & Pl.'s Reply. Plaintiff also contends the ALJ did not properly consider her seizure disorder in formulating her RFC and failed to correctly rely on VE testimony in response to hypothetical questions that included greater limitations than those found by the ALJ. See id. Finally, Plaintiff contends the AC erred in denying her request for review without considering the new evidence she submitted, namely a seizure log and summary composed by her mother. See id. As explained below, the ALJ considered evidence regarding Listings 11.02 and 11.03 and properly concluded Plaintiff's impairment did not meet or medically equal either. Moreover, the ALJ appropriately considered Plaintiff's seizure disorder in formulating her RFC, and properly consulted VE testimony in determining whether jobs exist in significant numbers that Plaintiff could perform. Finally, the AC did not err in denying Plaintiff's request for review

5

without considering her newly submitted evidence. Therefore, none of Plaintiff's arguments form a valid basis for reversal or remand.

### A. The ALJ Properly Evaluated the Evidence and Concluded Plaintiff's Severe Impairment Did Not Meet or Medically Equal Listing 11.02 or 11.03.

Plaintiff argues the ALJ improperly evaluated the evidence in her determination Plaintiff failed to meet Listing 11.02 or 11.03, and that finding was not supported by substantial evidence. Pl.'s Br., pp. 13-16; Pl's Reply. As discussed herein, the ALJ determination was supported by substantial evidence and Plaintiff's claim fails.

#### 1. Listing Framework and Standard

At step two of sequential evaluation process for a CRD SSI claim and step one of the sequential evaluation process for a CIB claim, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993); 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i). Plaintiff bears the burden of showing her condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work

experience. See 20 C.F.R. § 416.920(d). The claimant bears the burden of producing medical evidence demonstrating his condition or conditions meet or equal a listed impairment. See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

### 2. The ALJ Properly Concluded Plaintiff's Severe Impairment Did Not Meet or Medically Equal Listing 11.02 or 11.03.

At step two of the sequential evaluation process for Plaintiff's CDR SSI claim and step one of the sequential evaluation process for Plaintiff's CIB claim, the ALJ found Plaintiff had the severe impairment of "a history of arteriovenous malformation [AVM] of the brain [and] status post radiosurgery with residual seizure disorder." R. 57. However, the ALJ found Plaintiff's AVM with residual seizure disorder did not meet or equal listing 11.03 because

> claimant does not have seizure episodes that are documented to occur more than once a week. This is documented by the claimant's treatment records, which do not document seizures occurring more than once a week. Between late 2007 and June 2009, the claimant was seizure-free. Recent records refer to the seizure disorder as "resolved."

Id. (internal citations omitted). Plaintiff argues the ALJ should have found her seizure disorder met or equaled Listing 11.02 or 11.03. Pl. Br. 13-16.

At the time of the ALJ's decision, Listing 11.03 required:

> [N]onconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03 (version in effect in 2014).

Thus, to meet Listing 11.03 at the time of the ALJ's decision, a claimant must have had a petit mal, psychomotor, or focal seizure "documented by detailed description of a typical seizure pattern, including all associated phenomena[,]" once a week or more for at least three months

7

with treatment. Id. However, as the ALJ noted, the medical records reflect that between late 2007 and June 2009, Plaintiff was seizure-free. R. 679, 704, 734. Similarly, in 2010, Plaintiff denied seizures and indicated her medication kept them under control. R. 543, 605. Beginning in 2011, Plaintiff again reported seizures; however, these reports were inconsistent, as several treatment notes indicated the seizure disorder was resolved, and Plaintiff never reported seizures occurring more than once a week for any extended period. R. 400, 411, 442-443, 475-476, 515, 1187, 1190, 1442, 1480, 1487, 1509, 1532, 1538, 1549, 1631. Accordingly, substantial evidence supports the ALJ's decision that Plaintiff's seizure disorder did not meet Listing 11.03.

Although the ALJ failed to directly address whether Plaintiff's seizures met Listing 11.02, this alone does not merit reversal. "While Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing." Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986). Here, the ALJ made an express finding Plaintiff did not meet any listing. R. 57. Although the ALJ did explain in detail why some of Plaintiff's sever impairments failed to meet a listing, she was not required to cite all the evidence she considered or specify why each severe impairment did not meet a listing.

Moreover, the ALJ's implied determination that Plaintiff did not meet listing 11.02 is supported by substantial evidence. At the time of the ALJ's decision, Listing 11.02 required:

> [C]onvulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment [w]ith:
>
>     A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
>     B. Nocturnal episodes manifesting residuals which interfere with activity during the day.

8

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02 (version in effect in 2014).

Thus, to meet Listing 11.02 at the time of the ALJ's decision, a claimant must have had a grand mal or psychomotor seizure "documented by detailed description of a typical seizure pattern, including all associated phenomena[,]" once a month or more for three months with treatment. Id. Although Plaintiff testified to suffering grand mal seizures at various times, she points to no evidence in the record indicating she regularly suffered convulsive epileptic episodes monthly (or more frequently) for three months in a row despite treatment. See Pl.'s Br., pp. 15-16. Without evidence from the medical record of monthly grand mal or psychomotor seizures, Plaintiff cannot establish she meets Listing 11.02.

In sum, the ALJ's determination that Plaintiff did not meet or medically equal Listing 11.02 or 11.03 is supported by substantial evidence.

### B. Framework for Formulating Plaintiff's RFC

At step seven of sequential evaluation process for a CDR SSI claim and step six of the sequential evaluation process for a CIB claim, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012).

Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying,

9

pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining whether a claimant can return to his past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

In categorizing the physical exertion requirements of jobs, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R § 404.1567. Here, the ALJ determined Plaintiff has the ability to perform less than the full range of light work. "Light work" is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . If someone can do light work . . . he or she can also do sedentary work." 20 C.F.R. § 404.1567(b).

In determining at step seven and six in the sequential process whether Plaintiff's RFC for a light work would allow her to perform any work, the ALJ consulted the VE. The VE identified assembler of switch boxes, electronics worker, and assembler of electrical accessories as work a hypothetical individual with the Plaintiff's age, education, past job experience, and physical limitations could perform and that exist in Georgia and the national economy. R. 1705.

## C. The ALJ Properly Evaluated the Medical Evidence.

Plaintiff contends the ALJ failed to consider all the medical evidence and limitations regarding Plaintiff's seizure disorder when formulating his RFC. Pl.'s Br., pp. 11-12. Contrary to Plaintiff's assertion, it is clear the ALJ considered Plaintiff's seizure disorder throughout the

sequential evaluation process, and thoroughly discussed the medical evidence related to that impairment.

In her RFC determination, the ALJ noted medical records reflect Plaintiff had few, if any, seizures between 2008 and the birth of her son in February 2011. R. 67, 69, 442, 543, 679, 704, 734, 736. Furthermore, the ALJ found Plaintiff's subsequent reports of seizures from February 2011 onward to be varied and inconsistent with repeated treatment notations indicating Plaintiff's seizure disorder had "resolved," the absence of a medical provider witness to any seizure, and the absence of EEG test results confirming her seizures as alleged. R. 67, 69, 400, 411, 1187, 1190, 1442, 1480, 1487, 1509, 1532, 1535, 1538, 1549, 1595, 1631. Moreover, by limiting her to a reduced range of light-level work and jobs that are low stress and have no concentrated exposure to extreme heat, humidity, and hazards, the ALJ properly considered and accounted for Plaintiff's seizure disorder in her RFC determination. R. 61.

Plaintiff argues the ALJ's delay of ten months after the hearing to issue her decision "was prejudicial in the sense that it denied her a fair hearing." Pl.'s Br., p. 12. Plaintiff cites no authority requiring an ALJ to issue her decision within a specific time frame. Moreover, throughout her opinion, the ALJ considered and referred to hearing testimony in detail, indicating her memory did not "fade[] with the passage of time," id., as Plaintiff contends. R. 55, 58-59, 65-68. Indeed, Plaintiff cannot demonstrate any prejudice from the ten-month delay. See Bellew v. Acting Com'r of Soc. Sec., 605 F. App'x 917, 932 (11th Cir. 2015) ("there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded"). Accordingly, the ALJ properly considered the medical evidence regarding Plaintiff's seizure disorder, including the hearing testimony, and substantial evidence supports the RFC finding.

11

### D. The ALJ Properly Relied on the VE's Testimony to Determine Plaintiff Was Not Disabled.

Plaintiff also argues the ALJ erred at the final step by posing a hypothetical question to the VE that failed to properly account for her seizure disorder. Pl.'s Br., pp. 16-17. As explained below, substantial evidence supports the ALJ's finding that Plaintiff can perform the requirements of unskilled, light work as identified by the VE.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

> [W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for these limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. at 1180; see also Lee v. Comm'r, Soc. Sec. Admin., 551 F. App'x 539, 541 (11th Cir. 2014); Washington v. Soc. Sec. Admin., Comm'r, 503 F. App'x 881, 883 (11th Cir. 2013).

Here, Plaintiff essentially argues the ALJ incorrectly determined her RFC, and therefore

the hypotheticals proposed to the VE based on a correct RFC determination would eliminate all competitive jobs for Plaintiff. Pl.'s Br., pp. 16-17. However, the ALJ's RFC determination was supported by substantial evidence, as discussed above, and it is clear the ALJ's hypothetical properly accounted for all those limitations.

The first hypothetical posed by the ALJ asked as follows:

Can you please assume an individual of the same age, education, and work history as the claimant. The individual has the ability to perform the exertional or non-exertional requirements of all work,[3] except they can only perform frequent balancing, stooping, kneeling, crouching, and crawling, occasional climbing of ramps and stair, no climbing of ladders, ropes, or scaffolds. They need to avoid concentrated exposure to extreme heat, humidity, and hazards in the work setting such as dangerous moving machinery, and working at heights. They can perform simple tasks, no detailed or complex tasks. They need a low stress job which I am defining as requiring occasional decision making, occasional adaptation to change in a work setting, and no high production pace tasks such as a high volume assembly line type work. The individual can have superficial contact with the public, but should not perform any customer service sales counter type jobs, and they can work in proximity to others, but would do best in more solitary work tasks.

R. 1704. The VE opined those limitations would allow Plaintiff to perform three light, unskilled jobs that exist in the regional or national economy: assembler of switch boxes, electronics worker, and assembler of electrical accessories. R. 1705.

In her hypothetical, the ALJ included all the limitations she found Plaintiff to have in her RFC determination. R. 61, 1704. As discussed, the ALJ's RFC determination is supported by substantial evidence. See *supra* Part III.C. Plaintiff cannot bootstrap her challenge of the ALJ's RFC determination into a challenge of her consideration of VE testimony. It is clear the ALJ's hypothetical accounted for all Plaintiff's limitations.

---

[3] In her RFC determination, the ALJ found Plaintiff had the ability to perform only light work, not all work. However, because all of the jobs identified by the VE were classified as light work, this error in the posed hypothetical is harmless. See Jones v. Comm'r of Soc. Sec., 492 F. App'x 70, 73 (11th Cir. 2012) (finding ALJ's failure to include claimant's driving limitation in hypothetical posed to VE harmless because it did not affect outcome of case). Indeed, Plaintiff concedes the error "may be harmless." Pl.'s Br., p. 17, n.9.

In sum, in presenting her hypotheticals to the VE, the ALJ properly included all limitations in Plaintiff's RFC. R. 21. Because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics, the ALJ's reliance on the VE testimony was proper. McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63.

### E. The AC Did Not Err in Refusing to Consider New Evidence.

Evidence submitted to the AC is part of administrative record and must be considered in conjunction with the entirety of the record to determine whether substantial evidence supports the ALJ's decision. Ingram v. Comm'r of Soc. Sec. Admin, 496 F.3d 1253, 1266-67 (11th Cir. 2007). Moreover, "[w]ith few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including when asking the AC to review the ALJ's decision. Id. at 1261. Although the AC may exercise its discretion not to review the ALJ's decision, the AC "must consider new, material, and chronologically relevant evidence" submitted by a claimant. Id. New evidence is material if it is relevant and probative such that "there is a reasonable possibility" of changing the administrative result. Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1321 (11th Cir. 2015) (quoting Hyde v. Bowen, 823 F.2d 456, 459 (11th Cir. 1987)); see also Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988). Evidence of medical treatment post-dating the ALJ's decision may be chronologically relevant. Washington, 806 F.3d at 1322-23. However, the additional evidence at issue must be viewed in light of the findings relied upon by the ALJ to determine Plaintiff was not disabled.

When the AC denies review after refusing to consider new evidence, that decision is subject to judicial review. Id. at 1320. "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." Id. at 1321. However, the

AC need not "provide a detailed discussion of a claimant's new evidence when denying a request for review." Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 784 (11th Cir. 2014); Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).

Here, there is no "reasonable probability" Plaintiff's new evidence—the seizure log and summary kept by her mother—would change the administrative result. The ALJ already considered extensive hearing testimony and a December 2011 written statement from Plaintiff's mother, and, despite giving them consideration, did not find them probative of the ultimate issue of disability because they relied on Plaintiff's subjective reports and were outweighed by clinical and laboratory evidence and Plaintiff's overall functional abilities. R. 68-69, 210-217, 1699-1703. Although more detailed and specific, the log and summary are largely duplicative of her mother's prior testimony. Accordingly, the AC did not err in refusing to consider Plaintiff's new evidence on review. That the AC did not give a detailed rationale for its denial does not change this outcome. Mitchell, 771 F.3d at 784; Ingram, 496 F.3d at 1262.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 28th day of August, 2017, at Augusta, Georgia.

_____<br>
BRIAN K. EPPS<br>
UNITED STATES MAGISTRATE JUDGE<br>
SOUTHERN DISTRICT OF GEORGIA